IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| APRIL BLANTON, o/b/o T.M.B., | ) | CASE NO. 1:14 CV 2468 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by April Blanton, on behalf of T.M.B., under 42 U.S.C.

§ 405(g) for judicial review of the final decision of the Commissioner of Social Security

denying his application for children's supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 13. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.      Background facts and decision of the Administrative Law Judge ("ALJ")**

T.M.B. was born on November 17, 2005, and was seven years old on the day of his hearing.[11] He was in first grade at Windsor Elementary School and was not in special classes.[12] But, did have a tutor from the school who came to the house because he was behind in his classes because of missing so much school.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that T.M.B. had the following severe impairments: asthma and enuresis.[14] The ALJ determined, however, that the child did not have an impairment or combination of impairments that

---

[6] ECF # 12.

[7] ECF # 14 (Blanton's brief); ECF # 17 (Commissioner's brief); ECF # 18 (Blanton's reply brief).

[8] ECF # 14-2 (Blanton's charts); ECF # 17-1 (Commissioner's charts).

[9] ECF # 14-1 (Blanton's fact sheet).

[10] ECF # 24.

[11] ECF #14, at 2.

[12] *Id.*

[13] *Id.*

[14] Transcript ("Tr.") at 16.

meets, equals or functionally equals the severity of one of the impairments listed in Appendix 1.[15] He concluded, therefore, that T.M.B. was not under a disability.[16]

## C.     Issues on judicial review and decision

Blanton asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Blanton presents the following issues for judicial review:

1.     Because he did not have a medical expert present, did the ALJ erroneously rely on the opinion of state agency physicians who did not have the opportunity to examine T.M.B, listen to the mother's testimony at the hearing, or see the evidence presented after the reconsideration decision but prior to the hearing relating to T.M.B.'s problems?

2.     Did the ALJ properly apply the Social Security rules for adjudicating childhood disability claims?

Blanton also asserts three sub-issues:

•      Did the ALJ erred in finding that T.M.B. did not have an extreme impairment in the domain of health and well-being for purposes of functionally equaling a listed impairment?

•      Did the ALJ properly rely on the opinions of reviewing physicians from the State Agency?

•      Did the ALJ improperly discredit the testimony of April Blanton, T.M.B.'s mother.

For the reasons that follow, I conclude that the ALJ's finding is supported by substantial evidence and must be affirmed.

---

[15] *Id.* at 16.

[16] *Id.* at 27.

## Analysis

**A.    Applicable Law**

*1.    Standard of review*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable

to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[17]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds

could reach different conclusions on the evidence.  If such is the case, the Commissioner

survives "a directed verdict" and wins.[18]  The court may not disturb the Commissioner's

findings, even if the preponderance of the evidence favors the claimant.[19]

---

[17] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[18] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[19] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.     *Meeting a listing at step three*

If a claimant has a severe impairment or combination of impairments that meets one of the listings in Appendix 1 to Subpart P of the regulations, the claimant is disabled.[20] Because the listings describe impairments that the Social Security Administration considers "severe enough to prevent and individual from doing any gainful activity, regardless of his or her age, education, or work experience,"[21] the Commissioner will deem a claimant who meets or equals the requirements of a listed impairment conclusively disabled.[22]  Each listing sets out "the objective medical and other findings needed to satisfy the criteria of that listing,"[23] and the claimant bears the burden of proving[24]  that he has satisfied all of he criteria of a listing in order to "meet the listing."[25]

---

[20] *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Circ. 2009); *Cunningham v. Comm'r of Soc. Sec.*, No. 5:10CV1001, 2012 WL 1035873, at *2 (N.D. Ohio March 27, 2012) (citing Rabbers).

[21] 20 C.F.R. § 404.1525(a).

[22] *Rabbers*, 582 F.3d at 653.

[23] 20 C.F.R. § 404.1525(c)(3).

[24] *Rabbers*, 582 F.3d at 653.

[25] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

Even if a claimant cannot demonstrate disability by meeting the listing, he may be disabled if his impairment is the medical equivalent of a listing.[26] Medical equivalent means that the impairment is "at least as equal in severity and duration to the criteria of any listed impairment."[27] The claimant seeking a finding that an impairment is equivalent to a listing must present "medical findings" that show his impairment is "equal in severity to all the criteria for the one most similar listed impairment."[28]

While the Sixth Circuit "does not require a heightened articulation standard [from the ALJ] at Step Three of the sequential evaluation process,"[29] "in order to conduct a meaningful review, the ALJ must make it sufficiently clear in his or her decision the reasons for the determination [as to the meeting a listing] in order for the Court to conduct a meaningful review."[30]

Specifically, the Sixth Circuit in *Reynolds* states the requirements for articulating the ALJ's step three analysis as follows:

---

[26] 20 C.F.R. § 404.1520(a)(4)(iii).

[27] 20 C.F.R. § 404.1526(a).

[28] *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)(emphasis in original).

[29] *Marok v. Astrue*, No. 5:08CV 1832, 2010 WL 2294056, at *3 (N.D. Ohio June 3, 2010) (citing *Bledsoe v. Barnhart,* No. 04-4531, 2006 WL 229795, at *411 (6th Cir. Jan. 31, 2006) (citing *Dorton v. Hecker*, 789 F.2d 363, 367 (6th Cir. 1986).

[30] *Eiland v. Astrue*, No. 1:10CV2436, 2012 WL 359677, at *9 (N.D. Ohio Feb.2, 2012) (citing *Marok*, 2010 WL 2294056. At *3 (citations omitted)).

In short, the ALJ need[s] to actually evaluate the evidence, compare it to the criteria of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without [such articulation], it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.[31]

Recent decisions in the District apply this rubric from *Reynolds* teach plainly that "a mere rote recitation if boilerplate language by an ALJ"[32] at step three provides an insufficient explanation for a conclusion regarding the meeting of a listing and so will require a remand.[33]

### 3. *Functional equivalency for purposes of children's supplemental security income claims.*

Functional equivalency to a listing for purposes of a child's claim for supplemental security income is governed by 20 C.F.R. § 416.926a. Under the regulation, for a child between 6 and 12 years of age, the inquiry is whether the impairment imposes an extreme or marked limitation in connection with six domains – acquiring and using information,

---

[31] *Reynolds*, 424 F.App'x at 415. In this regard, I note as Magistrate Judge Burke in *Shea v. Astrue*, No. 1:11 CV 1076, 2012 WL 967088, at *10 n. 6 (N.D. Ohio Feb. 13, 2012), that the Sixth Circuit's insistence on the articulation of reviewable reasons directly follows from the ALJ's statutory duties at 5 U.S.C. § 557 ( C )(3)(A) to include the "reasons or basis" for a decision. Therefore, the Sixth Circuit has determined that the "reasons requirement" is both a procedural and substantive requirement, "necessary in order to facilitate effective and meaningful judicial review." *Shea*, 2012 WL 967088, at *10 n. 6 (quoting *Reynolds*, 424 F. App'x at 414).

[32] *Jones v. Comm'r of Soc. Sec.*, 5:10CV2621, 2012 WL 946997, at *8 (N.D. Ohio March 20, 2012)(Baughman, MJ).

[33] *Id.*; *Cunningham v. Comm'r of Soc. Sec.*, No. 5:10CV1001, 2012 WL 1035873, at *2 (N.D. Ohio March 27, 2012)(citations omitted)(Baughman, MJ); Shea, 2012 WL 967088, at *10 (citations omitted); *May v. Astrue*, No. 4:10CV1533, 2011 WL 3490186, at *9 (N.D. Ohio June 1, 2011)(White, MJ), adopted, 2011 WL 3490229 (N.D. Ohio Aug. 10, 2011)(Adams, J.); *Marok*, 2010 WL 2294056, at —4-5 (N.D. Ohio June 3, 2010)(Pearson, MJ).

attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being.[34]  If a claimant has an extreme limitation in one of these domains or a marked limitation in two domains, he or she is considered functionally equivalent to a listing and, therefore, disabled.[35]

**B.**     **Review of the ALJ's decision**

This case essentially presents the question of whether substantial evidence supports the ALJ's finding at Step Three that T.M.B.'s asthma impairment does not meet or functionally equal the requirements of a listing.[36] Blanton argues that the  ALJ should not have given great weight to the opinions of state agency reviewing physicians that the severity of the asthma impairment was marked, not extreme. Also, Blanton contends that the ALJ improperly discounted her testimony as the child's mother.

As Blanton readily acknowledges,[37]  in this case there was no opinion from a treating physician.  Instead, the ALJ gave "great weight" to the reports of state agency reviewing

---

[34] 20 C.F.R. § 416.926a(b)(1).

[35] 20 C.F.R. § 416.926a(d).

[36] I note that although asthma - Listing 103.03 - is the primary listing considered by the ALJ, he also reviewed the listings for chronic pulmonary insufficiency (Listing 103.02). *See*, tr. at 16-17.

[37] ECF # 14 at 13.

physicians Dr. Uma Gupta[38] and Dr. Janice Taylor,[39] each with a specialty in pediatrics,[40]in determining that T.M.B. had marked, as opposed to extreme, limitations in the domain of health and physical well-being and so did not meet or equal the listing at 103.03.[41]

Blanton challenges this decision on four grounds:

(1) that the ALJ "played doctor" in deciding that T.M.B.'s asthma did not meet the B part of the listing, which addresses the  frequency and severity of attacks;[42]

(2) that the ALJ should have considered, with appropriate expert support, whether T.M.B. met or was equal to Listing 103.03 C, which addresses persistent low-grade wheezing;[43]

(3) that the state agency reviewing physicians did not see all of the medical records in the file, nor examine T.M.B. or speak to his mother;[44]and,

(4) that other evidence in the record supports a finding that T.M.B.'s limitations are more properly describes as "extreme" rather than "marked."[45]

---

[38] Tr. at 61-63.

[39] *Id*. at 72-74.

[40] *Id*. at 61-63, 72-74.

[41] *Id*. at 25. The reports did not find any limitation in any of the other five domains. *See, id.* at 61-63, 72-74.

[42] ECF # 14 at 11-13.

[43] Tr. at 12-13.

[44] *Id*. at 13-14.

[45] *Id*. at 14-15.

Blanton's first argument asserts that the asthma impairment either meets the listing at 103.03 B or alternatively meets the listing for subpart C.[46] She makes no argument concerning subparts A or D.  As to subpart B, she contends that in the absence of any treating source opinion, the ALJ impermissibly "played doctor" by himself reviewing the medical record to determine if T.M.B. met or equaled the listing at subpart B.[47]

But, as was discussed above, the claimant bears the burden of establishing that a listing has been met. As such, in the absence of any report from a treating source, especially where, as here, there are extensive records from such sources,[48] the ALJ may rely on the report of state agency reviewing sources consistent with the medical evidence. Both reviewing sources specifically opined that T.M.B. did not meet or equal the listing at 103.03, and in doing so particularly cited subpart B.[49] Absent a contrary opinion, the ALJ is entitled to rely on these opinions as concerns subpart B.

That said, and as concerns Blanton's second argument, the ALJ did attempt to articulate reasons from the record as to why T.M.B. did not meet the listing at subpart C, stating that the record "has not documented the presence of low-grade wheezing between

---

[46] ECF # 14 at 11-13.

[47] *Id*. at 13.

[48] *See*, tr. at 317-18, 319, 321, 324-25, 326, 328-29, 331, 333, 337-39, 343, 345, 349, 359, 361, 367-68, 369, 378, 380, 382, 384-85, 386-87. 414 (treatment notes of Dr. Teresa Ramsey, a pediatrician); 588, 590-92, 631, 635-36 (treatment notes of Dr. Danielle Goetz, a pulmonologist).

[49] *Id*. at 62 (Dr. Gupta), 72 (Dr. Taylor).

acute attacks or the absence of extended symptom-free periods requiring daytime and nocturnal use of bronchodialators."[50] The ALJ further discussed the medical record in greater detail later in the opinion where he noted, for example, that treatment notes of the treating pulmonologist from June to September 2012 show that in an examination in June T.M.B. had "some" transmitted upper airways sounds with end-expiratory wheezing, but that "some of the wheezing sounded volitional" and a CT scan of the chest was normal.[51] Three months later in September, the same treating pulmonologist conducted a pulmonary function study that showed "minimal airway obstruction."[52] After noting that T.M.B. did receive treatment for an acute asthma exacerbation in October, the ALJ then noted that at the next two emergency room visits,  T.M.B. had only "slight expiratory wheezing" in January 2013, and "no evidence of respiratory distress, rales, rhonchi, or wheezing" in February 2013.[53]

While it is clearly preferable that an ALJ cross-cite to this detailed examination of the record in the earlier portion of the opinion referencing the absence of low-grade wheezing between attacks, it is undisputed that the ALJ here did document in the opinion itself an evidentiary foundation for his conclusion that the evidence does not show "persistent" low-grade wheezing between attacks, such as is necessary to meet subpart C. Moreover, it is the ALJ's duty at Step Three, as affirmed in *Reynolds*, to evaluate the medical evidence in light

---

[50] *Id*. at 16.

[51] *Id.* at 25 (citing record).

[52] *Id*. at 26 (citing record).

[53] *Id*. (citing record).

of the listing's objective standards, and then articulate reasons capable of meaningful judicial review as to whether the claimant meets the listing. Thus, far from impermissibly "playing doctor," or ignoring a need for a medical expert, the ALJ here was engaged in exactly the review required by law in examining the medical evidence of record in light of the objective criteria of subpart C.

As regards the argument that the opinions from the state agency reviewers were flawed because they did not include an examination of T.M.B. nor include a review of some later medical evidence, I note that neither assertion is sufficient to destroy reliance on such opinions. First, a records-only review is provided for in the regulations, and courts have affirmed that such reviews, while entitled to less weight than from examining sources, nevertheless "have some value, and can, under some circumstances, be given significant weight."[54] In addition, as to the existence of later medical records that were not considered by the reviewing physicians, it is well-settled that the failure of reviewing sources to consider later-filed records may make such opinions "problematic,"[55] the present case is not the situation where the reviewers were without access to the opinions of treating sources yet

---

[54] *Douglas v. Comm'r of Soc. Sec.,* 832 F.Supp.2d 813, 824 (S.D. Ohio 2011).

[55] *See, Pettibone v. Comm'r of Soc. Sec.,* 2013 WL 3279263, at * 7 (S.D. Ohio June 27, 2013)(citations omitted).

given greater weight than those sources,[56] or failed to deal with a significant later event that likely made reliance on previous findings obviously "inappropriate" or "outdated."[57]

Rather, the key question as to the weight given the reviewing physicians' reports remains as always whether those reports are supported by the evidence.[58] Here, as the Commissioner points out, the later evidence not before the reviewing physicians relates to treatment records in late 2012 and early 2013 that as already noted document some continuing ongoing issues with asthma but do not show signs that this condition worsened or that T.M.B.'s impairments imposed more than the marked limitation already observed by the reviewing sources.

Similarly, Blanton's contention that her credibility was inappropriately discounted is undercut by both the opinions of the reviewing sources as to the extent of T.M.B.'s limitations, as documented in the medical evidence, and by the ALJ's findings, discussed above, that subpart C was not met. To the degree that Blanton's testimony about T.M.B.'s condition is contradicted by either the reports of the reviewing physicians or the medical evidence itself, it cannot have been error for the ALJ to discount that testimony.

Finally, with regard to the arguments concerning functional equivalency, I note again that the ALJ may rely on the opinions of the state reviewing physicians in the absence of any

---

[56] *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

[57] *McCarty v. Astrue*, 2011 WL 1235188, at * 7 (S.D. Ohio March 30, 2011)(failure to consider evidence of later spinal fusion surgery made reports based on claimant's pre-surgery condition "inappropriate").

[58] *Id*.

report from a treating source. Blanton argues that the medical evidence supports a greater

limitation than that found by the state agency reviewing physicians. While evidence in the

record may support that argument, the law provides that the ALJ's decision will be upheld

if supported by substantial evidence, even though the record may contain evidence supportive

of the claimant's position.[59] The opinions of the state agency physicians, here, and other

evidence in the record, supports the ALJ's no disability finding.

## Conclusion

Accordingly, for the reasons stated, I find that substantial evidence supports the

finding of the Commissioner, which is therefore affirmed.


IT IS SO ORDERED.


Dated: February 29, 2016                          s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge

---

[59] *Buxton*, 246 F.3d at 772.